1  J. TONY SERRA, SBN 32639
   JAMES A. BUSTAMANTE, SBN 133675
2  Pier 5 Law Offices
   506 Broadway
3  San Francisco, CA 94133
   Telephone:(415) 986-5591
4  Fax: (415) 421-1331
   Attorneys for Plaintiffs Ajaye Hampton
5  and Gregory Hampton

6  VINCENT J. COURTNEY, JR., SBN 56801
   SYLVIA COURTNEY, SBN 85434
7  COURTNEY LAW OFFICES
   22 Battery Street, Suite 333
8  San Francisco, CA  94111
   Telephone:  (415) 392-5040
9  Fax: (415) 392-3729
   Attorneys for Plaintiffs Christine
10 Hallinan, Courtney Hallinan, Gavin
   Hallinan, and Devon Hallinan

11

12

13                   **UNITED STATES DISTRICT COURT**

                   **NORTHERN DISTRICT OF CALIFORNIA**
14

15

16 AJAYE HAMPTON,  GREGORY            )
   HAMPTON,  CHRISTINE HALLINAN,     )
   COURTNEY HALLINAN, GAVIN          )  **COMPLAINT FOR DAMAGES**
17 HALLINAN and DEVON HALLINAN,      )  **AND DEMAND FOR JURY**
                                     )  **TRIAL**
18              Plaintiffs,          )
                                     )  **(42 U.S.C. § 1983)**
19          v.                       )
                                     )
20                                   )
   JAMES GOULART,  KYLE McDEVITT,    )
21 SAN MATEO COUNTY SHERIFF'S        )
   OFFICE,  COUNTY OF SAN MATEO,     )
22 LOUIS CONCEICAO and HUMBERTO      )
   NAVARRO,                          )
23                                   )
                Defendants.          )
24 _____  )

25

26

27

28

COMPLAINT

1  Plaintiffs allege:

2  **JURISDICTION**

3      1.    This is an action brought under 42 U.S.C. § 1983 to recover damages for violation of

4  plaintiffs' rights under the Fourth Amendment to the U.S. Constitution to be secure in their

5  persons and houses against unreasonable searches and seizures.  Plaintiffs also seek damages for

6  violation of their rights to privacy under both the U.S. Constitution and Article 1 § 1 of the

7  California Constitution, and for violation of other rights they have and had under California law as

8  set forth below, all of which arose out of the same operative facts as the claims they make herein

9  for violations of  federal law.

10     2.    The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331, 1342 and 1367(a).

11     3.    On or about December 26, 2002, Plaintiffs presented a claim to

12  defendant San Mateo County for damages sustained on account of the conduct of defendants

13  Goulart and McDevitt as described below.  On February 3, 2003, defendant San Mateo County

14  rejected said claim in its entirety.  This complaint is timely filed in accordance with California

15  Government Code Section 945.6.

16

17  **VENUE**

18     4.    The events or omissions giving rise to this claim occurred in San Mateo County.

19  Venue is therefore proper in the Northern District of California under 28 U.S.C. § 1391(b).

20

21  **PARTIES**

22     5.    Plaintiffs Ajaye Hampton, Gregory Hampton, Christine Hallinan, Courtney Hallinan,

23  Gavin Hallinan and Devon Hallinan are, and at all times mentioned in this complaint were,

24  citizens of the United States residing at 530 Miramar Drive, which is located within an

25  unincorporated area known as Miramar, within the County of San Mateo, California.

26     6.    Plaintiff Ajaye Hampton, age 17, is the son of plaintiff Gregory Hampton.

27     7.    Plaintiff Christine Courtney is representing her three children in this lawsuit.  They are

28  her daughter, Courtney Hallinan, age 10, and her two sons, Gavin Hallinan and Devon Hallinan,

COMPLAINT

1  ages 8 and 7 respectively.

2      8.     James Goulart is, and at all times mentioned in this complaint was, a Deputy Sheriff

3  employed by the  San Mateo County  Sheriff's Office and the County of San Mateo.  At all times

4  mentioned herein, Deputy Sheriff Goulart was acting within the course and scope of his

5  employment as a Deputy Sheriff and as a peace officer.  Deputy Sheriff Goulart is sued herein

6  individually, in his personal capacity.

7      9.     Kyle McDevitt is, and at all times mentioned in this complaint was, a Deputy Sheriff

8  employed by the San Mateo's Sheriff's Office and the County of San Mateo.  At all times

9  mentioned herein, Deputy Sheriff McDevitt was acting within the course and scope of his

10  employment as a Deputy Sheriff and as a peace officer.  Deputy Sheriff McDevitt is sued herein

11  individually, in his personal capacity.

12      10.    Defendant County of San Mateo (hereinafter "County") is a county  duly organized

13  and existing under the laws of, and located within, the State of California.  Defendant County is

14  made up of several departments including the Sheriff's Office.

15      11.    Defendant County of San Mateo Sheriff's Office (hereinafter "Sheriff's Office") is a

16  department of defendant County which employs and supervises deputy sheriffs.  Defendant

17  Sheriff's Office has the duty to see to it that deputy sheriffs employed by it are qualified and

18  appropriately trained and supervised in connection with the proper performance of their duties as

19  peace officers.

20      12.    Plaintiffs are informed and believe and thereon allege that defendant Louis

21  Conceicao is a process server who resides in San Francisco, California.

22      13.    Plaintiffs are informed and believe and thereon allege that defendant Humberto

23  Navarro is a process server who resides in San Francisco, California.

24      14.     Plaintiff is informed and believes and thereon alleges that at all times herein

25  mentioned, each defendant was the agent of each of the remaining defendants, and in doing the

26  things hereinafter alleged, was acting within the course and scope of such agency and with the

27  permission and consent of each co-defendant.

28

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

15.    The marriage between plaintiff Christine Hallinan and her former husband, Padriac Hallinan, terminated on March 25, 2002.  The Judgment in the divorce, filed on March 27, 2002, awarded plaintiff Christine Hallinan sole legal and physical custody of plaintiffs Courtney, Gavin and Devon Hallinan.  In addition, the March 27, 2002 Judgment ordered that: "All issues relating to custody, visitation or the general well being of any/all of the children shall first be mediated by Family Court Services prior to seeking court intervention.  This shall include requests for restraining orders against any member of Wife's household or residence.  If Husband violates this section it shall constitute harassment of Wife."

16.    Plaintiff Christine Hallinan had requested that the above-mentioned language be included in the court order prohibiting Padriac Hallinan from requesting a restraining order relating to the custody, visitation and/or the general welfare of the children, without first submitting the issues or disputes to mediation, because he had previously obtained and served such an exparte  temporary restraining order ("TRO") on plaintiff Hampton on Christmas Day in 1999 and threatened to do so on other occasions.  When the TRO was served on plaintiff Gregory Hampton on Christmas Day in 1999, plaintiff Christine Hallinan, together with her three children, were forced to move from their residence to comply with the terms of the TRO until it was dissolved when her former husband simply failed to appear for the hearing.

17.    Padriac and Christine Hallinan had arranged for Mr. Hallinan to visit with his children whereby they would be under his care for one day, including overnight, after which Mr. Hallinan was to return them to their home on the evening of September 15, 2002.  However, Padraic Hallinan contacted Christine Hallinan by telephone on September 15, 2002 and told her he was not returning the children and would never bring them back to their home as long as Plaintiff Gregory Hampton resided there.

18.    Later that same day plaintiff Christine Hallinan contacted the Sheriff's Office for assistance and spoke with Deputy Sheriff Armando.  During this conversation she advised Deputy Sheriff Armando that she was divorced with three children and had been awarded sole legal

custody of the children; that her former husband presently had the children in his custody pursuant to an unsupervised visit which was agreed to with the specific understanding he would return the children to their home on September 15, 2002;  that earlier that day her former husband notified her by telephone that he was abducting the children and would not be returning them to their home that evening, that her former husband had a lengthy criminal history and substance abuse problem, and that she wanted the Sheriff's Office to assist her in regaining custody and control of her children from her former husband as she thought the conduct he was engaging in constituted criminal conduct and endangered her children.   In response, Deputy Sheriff Armando advised plaintiff Christine Hallinan that he would contact Padriac Hallinan by telephone to see what he could do.  Subsequently, Deputy Sheriff Armando told plaintiff Christine Hallinan that he had contacted her former husband, that he had denied he was abducting the children, and that although he would not be returning the children to their home that evening as he had agreed, he would nonetheless return the children by bringing them to their school in Half Moon Bay the following day, September 16, 2002.  Deputy Sheriff Armando also stated to her that the Sheriff's Office could not provide any additional assistance for her or her children because the matter was civil in nature.  Padraic Hallinan did take the Hallinan children to school on September 16, 2002, and they were returned to their home after school that same day.

19.    Based on information she received from her children regarding their recent visit with their father, plaintiff Christine Hallinan became suspicious and decided to contact her former husband.  She spoke with him by telephone on or about September 18, 2002, during which conversation he  told her that he was going to seek a temporary restraining order against plaintiff Gregory Hampton once again prohibiting him from being with the Hallinan children.  She reminded him that he could not do so without first proceeding to mediation as was required by the March 27, 2002 court order described in Paragraph 15 above.  Her former husband responded stating: "Just watch me."

20.    Plaintiff Christine Hallinan once again contacted the Sheriff's Office for assistance on or about September 18, 2002, and once again spoke with Deputy Sheriff Armando.  During this conversation she advised him that although she again had custody and control over her children,

her former husband had threatened to obtain and serve on plaintiff Gregory Hampton another TRO that would prohibit her children from residing together in their home with plaintiff Gregory Hampton.  She further explained to Deputy Sheriff Armando that her former husband had told her that despite the March 27, 2002 court order, he would proceed to obtain the restraining order against Greg Hampton without first proceeding to mediation.  She also told Deputy Sheriff Armando that if her former husband did secure such a restraining order without first proceeding to mediation he would be in violation of the March 27, 2002, court order mentioned in paragraph 15 above, and read to him the portion of the March 27, 2002, order which is quoted in Paragraph 15 above.  Further she told him that in the event such an order was served on plaintiff Hampton, their household would once again be disrupted.  Finally she explained that she wanted the Sheriff's Office to be notified of these matters because she expected problems in the near future and wanted the Sheriff's Office to be able to assist her in avoiding having their household again disrupted and her children negatively impacted by her former husband's refusal to comply with the specific provisions of applicable court orders.  Deputy Sheriff Armando told her that there was nothing the Sheriff's Office could do as the matter was a civil one and in any event, if what she stated to him was true, no judge would issue a restraining order inconsistent with the provisions of the March 27, 2002 court order.

21.     On September 16, 2002, Padriac Hallinan sought and obtained from the Superior Court for the County a  TRO, exparte, against plaintiff Gregory Hampton ordering that he stay away from plaintiffs Courtney, Gavin and Devon Hallinan.  The order was obtained by Padriac Hallinan in violation of the March 27, 2002, court order mentioned in Paragraph 15 above in that the TRO clearly concerned issues relating to custody, visitation and/or the general well being of the children and those issues were not first submitted to mediation.

22.     On September 30, 2002, defendants Louis Conceicao and Humberto Navarro attempted to serve plaintiff Gregory Hampton with the above-mentioned TRO.  At approximately 8:20 p.m., defendants Conceicao and Navarro entered the property upon which plaintiff's two story home is located and walked up to the front door at which point one of them then pounded on the door causing enough noise to startle all plaintiffs.  At the time, all plaintiffs were upstairs in

1   bed or getting ready to go to bed, except plaintiff Ajaye Hampton who was doing homework

2   downstairs in the kitchen.

3       23.   Plaintiff Gregory Hampton got up to respond to the pounding on the door and did so

4   initially by opening his bedroom window, which was located above the front door.  Plaintiff

5   Hampton then asked the process servers who they were and what they wanted.  One of the

6   defendant process servers responded stating they were "officers of the court" and that he needed to

7   come downstairs and speak with them.

8       24.   Plaintiff Gregory Hampton went downstairs at this point and spoke to the defendant

9   process servers without opening the front door.  At this time he was aware that plaintiff Christine

10  Hallinan's former husband had recently threatened to obtain a TRO and have it served on him in

11  violation of the above-mentioned March 27, 2002 court order, and he  suspected defendants

12  Conceicao and Humberto were attempting to serve such a TRO on him.  He had decided not to

13  accept service of any papers from the process servers because he did not want his household to

14  once again be disrupted and clearly indicated to defendants Conceicao and Navarro that he would

15  not open the door and wanted them to leave.   However, defendants Conceicao and Navarro

16  continued to refuse to leave and continued to argue that plaintiff Hampton had to open the door for

17  them.  After a brief period, plaintiff Gregory Hampton stated he was going to call the Sheriff's

18  Office to have the persistent process servers  removed for trespassing.  The process servers then

19  stated that they would also contact the Sheriff's Office.  Plaintiff Gregory Hampton then called the

20  Sheriff's Office and asked for assistance, explaining that the defendant process servers were on his

21  property without his consent and were refusing to leave.  He was then advised by the dispatcher

22  that deputies were already on their way.

23      25.   Defendants Goulart and McDevitt arrived at plaintiffs' residence within a few

24  minutes from the time plaintiff Gregory Hampton called the Sheriff's Office for assistance.  From

25  the time that the process servers arrived at plaintiff's residence until the time the defendant Deputy

26  Sheriffs arrived, all plaintiffs were and remained in their home.  During this same period, the

27  defendant process servers were and remained on plaintiff Hampton's property outside the home.

28  When defendant Deputy Sheriffs came to the door of the residence, Mr. Hampton opened it to

1  speak to them.  However, he did not go outside of his home because he did not want to be

2  personally served with papers by defendants Conceicao or Navarro and sought the protection of

3  his home.  Defendant Deputy Sheriffs, however, asked that he step outside of his home on more

4  than one occasion although he was communicating with them  from inside his house while

5  standing at the front door of his home with the door open where he was at a distance of

6  approximately four feet from the deputies.  Defendant Deputy Sheriffs never stated to plaintiffs

7  Christine Hallinan or Gregory Hampton why they wanted Hampton to step outside his home.

8      26.    While the defendant Deputy Sheriffs were at the front door, plaintiff Christine

9  Hallinan attempted to tell them that she suspected that defendants Conceicao and Navarro were

10  attempting to serve papers on Gregory Hampton which had been obtained from her former

11  husband and which he obtained in violation of the March 27, 2002, court order and another

12  restraining order which had been served on Padriac Hallinan.  She tried to tell them as well that

13  she had the court papers in her car and offered to get them so they could verify what she was

14  trying to communicate to them.  She also attempted to tell them what significant problems would

15  result, particularly for her and her children, if such a TRO was again served on Gregory Hampton

16  and attempted to stress that any such TRO would have been secured in violation of the March 27,

17  2002 court order.  However, the defendant Deputy Sheriffs refused to listen to her, essentially

18  ignored her except for motioning to her to keep quiet, and continued to tell Gregory that he should

19  come outside his home.

20      27.    One of the defendant Deputy Sheriffs left the front of plaintiffs' residence and

21  walked over towards the driveway to speak to defendants Conceicao and Navarro.  At that time,

22  plaintiff Christine Hallinan told the other deputy sheriff that she would go out to her car and obtain

23  the court orders she wanted them to review because, she told him, they probably were relevant to

24  any papers which the process servers might have been attempting to serve on Gregory Hampton.

25  She then left and obtained the court orders but the deputy sheriffs continued to ignore her and

26  made no effort to review the court orders.

27      28.    By this point it had become apparent to plaintiffs Gregory Hampton and Christine

28  Hallinan from the conduct of the defendant Deputy Sheriffs that for whatever reason, they were

1  acting as advocates for the process servers rather than neutral investigators or peacekeepers.

2  Throughout the entire period they were present, the defendant Deputy Sheriffs refused to listen to

3  what plaintiff Christine Hallinan was attempting to tell them and would only discuss with plaintiff

4  Gregory Hampton their desire that he come out of his home.

5      29.    At one point, Deputy Sheriff Goulart walked over to where the process servers were

6  standing, near a driveway on the premises.  Plaintiff Gregory Hampton then asked the other

7  deputy what was going on and specifically inquired as to whether he was being arrested or had

8  done anything wrong.  The other deputy did not look at him, but answered stated that he had done

9  something wrong but did not state what that was.  The only thing that Mr. Hampton did not do that

10 the deputies asked him to do was step outside of his home.  For reasons unknown to Mr. Hampton,

11 all the deputies seemed to be concerned with was that he step outside of his house.

12     30.    Defendant Deputy Sheriff Goulart returned and promptly told Gregory Hampton

13 again that he had to come outside his house.  Once again, he did not explain why.  Hampton  then

14 abruptly closed the door.  The Deputy then stated that he had to come outside his home because he

15 was under arrest.  A moment or two later, one of the deputies kicked in the door, which flew open

16 easily as it was neither latched nor locked.  The door hit and severely injured Hampton's face,

17 knocking him back in the process.   As Hampton, in his pajamas, was moving backward from the

18 force of the door the deputies proceeded to spray him with a disabling substance which filled the

19 home, causing injury to all of the complainants who were then in or near the living room.  In

20 addition, the deputies proceeded to brutally attack Mr. Hampton, including by hitting him with a

21 baton, despite the fact that at no time did he resist the arrest.

22     31.    While this was happening the process servers entered plaintiffs' home and personally

23 served a restraining order on plaintiff Gregory Hampton which in fact was being served for

24 Padraic Hallinan in violation of the March 27, 2002 court order.  At this time Christine Hallinan

25 complained to the defendant Deputy Sheriffs that in addition to using excessive force they were

26 also enabling the defendant process servers to trespass for the purpose of serving the illegally

27 obtained restraining order.  The Deputy Sheriffs then threatened to arrest her unless she stopped

28 complaining of their actions.

32.     Plaintiff Ajaye Hampton also objected to the officers regarding their use of excessive force on his father, and the unreasonable manner in which the defendant Deputy Sheriffs were conducting themselves, including by refusing to listen to what plaintiff Christine Hallinan was attempting to tell them regarding the protection she thought she had as a result of the March 27, 2002 court order.   As a result he was then threatened by the defendant Deputy Sheriffs in a menacing manner, demonstrating to him that if he persisted in complaining, he too would be battered and arrested.

33.     The entire incident complained of above was witnessed by plaintiff  Ajaye Hampton and the three Hallinan children.

34.     Plaintiff Gregory Hampton was arrested and taken to San Mateo County General Hospital by defendant Deputy Sheriffs for treatment, and then taken to San Mateo County jail, when he remained until he was released after posting bail.  Criminal charges were filed against him, alleging violations of California Penal Code Section 422 (terrorist threats); Section 71 (threatening public officers); Section 69  (preventing executive officers from performing their duties), and Section 148(a)(1) (resisting arrest).  Plaintiff was not prosecuted and charges were subsequently dropped.


**FIRST CLAIM FOR RELIEF**
**(Violation Of Civil Rights, 42 U.S.C. § 1983; All Plaintiffs against**
**Deputy Sheriffs Goulart and McDevitt)**

35.     The allegations set forth in Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

36.     At all times mentioned in this complaint, defendants Deputy Sheriff Goulart and Deputy Sheriff McDevitt were acting  under color of state law.

37.     In acting as alleged in this complaint, defendants Deputy Sheriff Goulart and Deputy Sheriff McDevitt violated the right of each plaintiff  to be free from illegal searches and seizures as is guaranteed them by the Fourth Amendment to the U.S. Constitution, and violated the rights of each plaintiff to privacy as is guaranteed them by the U.S. Constitution.

38.     As a proximate result of the acts of defendants Deputy Sheriff Goulart and Deputy

1  Sheriff McDevitt as alleged above, plaintiffs and each of them suffered physical damages, and

2  were subjected to humiliation and indignity and suffered great mental pain and suffering to their

3  damage in amounts to be proved at trial.

4         39.   As a result of such deprivations of their rights caused by the above-mentioned

5  conduct of defendants Deputy Sheriff Goulart and Deputy Sheriff McDevitt, plaintiffs and each of

6  them are entitled to relief under Section 1983 of Title 42 of the United States Code.

7         40.   Defendants Deputy Sheriff Goulart and Deputy Sheriff McDevitt did the things

8  herein alleged maliciously and oppressively.  Plaintiffs and each of them are therefore entitled to

9  an award of exemplary damages against Deputy Sheriff Goulart and Deputy Sheriff McDevitt in

10  amounts to be proved at trial.

11         WHEREFORE, plaintiffs request judgment as set forth below against these defendants.

12

13                      **SECOND CLAIM FOR RELIEF**
          **(Violation of Civil Rights, 42 U.S.C. s 1983; All Plaintiffs**

14                **Against San Mateo County Sheriff's Office, County)**

15         41.   The allegations set forth in Paragraphs 1 through 34 above are realleged and

16  incorporated herein by reference.

17         42.   At all times mentioned in this Second Claim for Relief, defendants San Mateo

18  County Sheriff's Office and County of San Mateo were engaged in state action under color of state

19  law.

20         43.   Defendants San Mateo County Sheriff's Office and County of San Mateo had and

21  has the duty to ensure that the deputy sheriffs it hires are qualified to be peace officers and after

22  they are hired, they had and have the duty to ensure that deputy sheriffs are adequately trained and

23  supervised in the performance of their duties as peace officers, particularly so as to prevent the

24  unconstitutional use of excessive force.  Furthermore, the employer had and has a duty to ensure

25  that peace officers employed by it are not retained if they are not qualified to perform in

26  accordance with the standards expected of peace officers.

27         44.   Plaintiffs are informed and believe and thereon allege that defendants San Mateo

28  County Sheriff's Office and County of San Mateo failed and fail to adequately train and supervise

the deputy sheriffs it employs in the performance of their duties as peace officers, particularly so as to prevent the unconstitutional use of excessive force, and have demonstrated a deliberate indifference to the rights of persons with whom deputy sheriffs regularly come into contact.

45. In doing the things alleged in this complaint, defendants San Mateo County Sheriff's Office and County of San Mateo violated the rights of each plaintiff to be secure in their homes and to be free from unreasonable searches and seizures, as is guaranteed them by the U. S. Constitution for which plaintiffs and each of them are entitled to relief under Section 1983 of Title 42 of the United States Code..

46. As a direct and proximate result of the failure of defendants San Mateo County Sheriff's Office and County of San Mateo to hire qualified peace officers and provide them with adequate supervision and training, plaintiffs and each of them have suffered physical damages, and were subjected to humiliation and indignity and suffered great mental pain and suffering to their damage in amounts to be proved at trial.

WHEREFORE, plaintiffs request judgment as set forth below against these defendants.

### THIRD CLAIM FOR RELIEF
**(Invasion of Privacy, California Constitution, Article I; All Plaintiffs Against Defendants Deputy Sheriffs Goulart and McDevitt, Louis Conceicao and Humberto Navarro)**

48. The allegation s set forth in Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

49. In doing the acts alleged herein, the aforementioned defendants wrongfully violated plaintiffs' inalienable right to privacy under Article 1 Section 1 of the California Constitution by intruding into their home, thereby disturbing their quiet enjoyment and their peace of mind without legitimate cause or reason.

50. Plaintiffs in no way consented to the intrusion and trespass into their home.

51. By reason of the abovementioned conduct of the defendants, plaintiffs were deprived of their right to privacy under Article 1 Section 1 of the California Constitution in that such conduct constituted an arbitrary intrusion by defendants upon the security of plaintiffs' privacy, was not authorized by law and was beyond their authority as peace officers or process servers.

COMPLAINT

52.     As a result of the acts of defendants Goulart, McDevitt, Conceicao and Navarro as alleged herein, plaintiffs and each of them suffered physical damages, and were subjected to humiliation and indignity and suffered great mental pain and suffering to their damage in amounts to proved at trial.

53.     Defendants did the things herein alleged maliciously and oppressively. Plaintiffs and each of them are therefore entitled to exemplary damages in amounts to be proved at trial.

WHEREFORE, plaintiffs request judgment as set forth below against these defendants.

### FOURTH CLAIM FOR RELIEF
**(Trespass in Violation of California Law; Plaintiff Gregory Hampton Against Defendants Deputy Sheriffs Goulart and McDevitt; Louis Conceicao, and Humberto Navarro)**

54.     The allegations set forth in Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

55.     At all times mentioned in this complaint, Plaintiff Gregory Hampton was and is the owner and in possession of certain real property consisting of land and a single family home located at 530 Miramar Drive, Miramar, California, County of San Mateo.

56.     As herein above alleged, on or about September 30, 2002, defendants and each of them wrongfully and unlawfully entered the above described land and residence, without the consent and over the objection of plaintiff Gregory Hampton, the proximate result of which plaintiff's property was damaged to such an extent that repairs were necessary to restore the land and the residence to their prior condition, all to plaintiff's damage in an amount to be proved at time of trial.

57.     As a further proximate result of defendants' entry onto plaintiff's land, and into his residence, plaintiff suffered physical injury, discomfort, annoyance, and experienced mental suffering caused by fear for his safety and that of the co-defendants.  Plaintiff sustained injuries to his nervous system and person, all of which injuries have caused and continue to cause plaintiff great mental, physical and nervous pain and suffering.  As a result of said injuries and mental distress, plaintiff has suffered general damages in an amount to be proved at time of trial.

58.     The aforementioned acts of defendants were willful, fraudulent and oppressive and

1  in conscious disregard of plaintiff's physical safety and mental well being, and plaintiff is

2  therefore entitled to punitive damages.

3        WHEREFORE, plaintiffs request judgment as set forth below against these defendants.

4

5                          **SIXTH CLAIM FOR RELIEF**
    **(False Imprisonment in Violation of California Law; Plaintiff Gregory Hampton Against**
6                **Defendants Deputy Sheriffs Goulart and McDevitt)**

7        59.    The allegations set forth in Paragraph 1 through 34 are realleged and

8  incorporated by reference.

9        60.    On the night of September 30, 2002, as alleged above, plaintiff was seized and

10 arrested while in his home at 530 Miramar Drive, Miramar, California, by defendants Goulart and

11 McDevitt, maliciously and without warrant or order of commitment or any other legal authority of

12 any kind, when plaintiff had not committed any crime or public offense.  Defendants later accused

13 plaintiff of committing the offenses of violations of California Penal Code Section 422 (terrorist

14 threats), Penal Code Section 71 (threatening public officers); Penal Code Section  69 (interfering

15 with executive in performance of duties) and Penal Code Section 148(a)(1) (resisting arrest), but in

16 fact the offenses had not occurred, nor did defendants have reasonable cause to believe that they

17 had occurred or that plaintiff had committed them.

18       61.   Defendant Goulart delivered plaintiff to San Mateo County General Hospital for

19 treatment and then to San Mateo County Jail where plaintiff was imprisoned until he secured his

20 release by posting bail.

21       62.    As a proximate result of the acts of defendants herein alleged, plaintiff

22 was compelled to secure his release by posting bail bond, was compelled to retain an attorney for

23 his defense against said false charges, and was compelled to incur expenses for medical treatment,

24 for all of which plaintiff was required to expend money to his damage in an amount to be proved

25 at time of trial.

26       63.    As a proximate result of the acts of defendants, and each of them,

27 plaintiff was injured in his health and strength and activity, sustaining injury to his body and shock

28 and injury to his nervous system and person, all of which injuries have caused plaintiff to suffer

1 extreme and severe physical pain and mental anguish, all to his general damage in an amount to

2 proved at time of trial.

3       64.    The acts of defendants Deputy Sheriffs Goulart and McDevitt as herein

4 alleged were willful, wanton, malicious, and oppressive, and justify the award of punitive

5 damages.

6       WHEREFORE, plaintiffs request judgment as set forth below against these defendants.

7

8                     **SEVENTH CLAIM FOR RELIEF**
**(False Imprisonment in Violation of California Law - Citizen's Arrest;**

9 **Plaintiff Gregory Hampton Against Defendants Deputy Sheriffs**
**Goulart and McDevitt, Louis Conceicao and Humberto Navarro)**

10

11       65.    The allegations set forth in Paragraphs 1 through 33, and 60 through 64

12 above are realleged and incorporated herein by reference.

13       66.    On the night of September 30, 2002, defendants Louis Conceicao and

14 Humberto Navarro, whom plaintiff is informed and believes are process servers, banged on the

15 front door of plaintiff's residence for the ostensible purpose of serving him with court papers.

16 Upon plaintiff's refusal to accept said papers which plaintiff had reason to know were in violation

17 of an existing court order, and because of defendants' refusal to leave plaintiff's property, plaintiff

18 called the office of the San Mateo County Sheriff and was told that they were already on their

19 way.  Plaintiff is informed and believes and thereon alleges that defendants called the San Mateo

20 County Sheriff and falsely accused plaintiff of making threats against defendants Conceicao and

21 Navarro in order to effectuate the improper service of process upon plaintiff and his arrest under

22 the guise of a citizen's arrest.

23       67.    As a result of the conduct of defendants Conceicao and Navarro, plaintiff

24 was seized, restrained and arrested against his will, over his protest, without any warrant of arrest

25 or any process of any kind, and without any justification or cause to believe that plaintiff had

26 committed any crime.  As such, defendants caused plaintiff to be taken into custody.  Plaintiff was

27 compelled to enter the police car operated by an officer of San  Mateo County Sheriff's Office,

28 taken to the county hospital and then to  county jail and imprisoned against his will until he

1   secured his own release.

2       68.    Defendants Conceicao and Navarro at all times herein mentioned were

3   the agents and employees of their co-defendants Deputy Sheriffs Goulart and McDevitt and in

4   doing the things alleged were acting within the course and scope of their agency and with the

5   permission and consent of their co-defendants.

6       69.    Plaintiff is informed and believes and thereon alleges that defendants

7   personally swore to and caused to be filed in the San Mateo County Superior Court, a criminal

8   complaint, charging plaintiff with criminal conduct as above alleged.

9       70.    Defendants, in causing the arrest and imprisonment of plaintiff as herein alleged,

10  acted with deliberate malice and oppression and without probable cause.

11      71.    Defendants, and each of them, maliciously and oppressively conspired

12  together to accomplish the acts herein alleged, and maliciously and oppressively deprived plaintiff

13  of his liberty, accused plaintiff of having committed crimes, and subjected plaintiff to the disgrace

14  of arrest.  Defendants, and each of them, knew that plaintiff had committed  no crime whatever

15  and the conspiracy and all the acts done thereunder were malicious and oppressive.  As a result,

16  plaintiff has suffered great damage and embarrassment in his community, all to his damage in a

17  sum to be proved at time of trial.

18      WHEREFORE, plaintiffs request judgment as set forth below against these defendants.

19

20                          **EIGHTH CLAIM FOR RELIEF**
21  **(Negligent Infliction of Emotional Distress; Plaintiffs Ajaye Hampton, Christine Hallinan, Courtney Hallinan, Gavin Hallinan and Devon Hallinan Against Defendant Deputy Sheriffs Goulart and McDevitt, Louis Conceicao and Humberto Navarro)**

22

23      72.    The allegations set forth in Paragraphs 1 through 34 above are realleged

24  and incorporated herein by reference.

25      73.    Defendants Deputy Sheriffs Goulart and McDevitt, Louis Conceicao and

26  Humberto Navarro were peace officers and process servers and had the duty to exercise

27  reasonable care in accordance with law and the standards of their professions in their interactions

28  with citizens with whom they come into contact in the exercise of their duties, particularly because

COMPLAINT

1  of the apparent legal authority that they possess.

2        74.    Defendants Conceicao and Navarro were at all times herein mentioned

3  the agents and employees of their co-defendants Deputy Sheriffs Goulart and McDevitt and in

4  doing the things alleged were acting within the course and scope of their agency and with the

5  consent and permission of their co-defendants.

6        75.    When defendants came to plaintiffs' residence on the night of September

7   30, 2002, they knew or should have known of the presence in the household of plaintiff Gregory

8  Hampton's minor son, Plaintiff Ajaye Hampton, Plaintiff Gregory Hampton's girlfriend, Christine

9  Hallinan, and her minor children, Courtney, Gavin and Devon Hallinan, and the familial

10 relationship that existed among all members of the household.  Further, defendants knew or should

11 have known that their conduct toward members of the household would be witnessed by any and

12 all members of the family.

13       76.    Defendants knew, or should have known, that there was no probable

14 cause to arrest Plaintiff Gregory Hampton, because Plaintiff Christine Hallinan made repeated

15 attempts to show the court documents to defendant Deputy Sheriffs Goulart and McDevitt, only to

16 have her efforts rebuffed and to herself be made the target of their abusive conduct.

17       77.    In addition, defendants knew, or should have known, that their failure to

18 exercise due care in the performance of their duties would cause plaintiffs, especially the minor

19 children, to suffer severe emotional distress.

20       78.    As a proximate result of defendants' breach of their duties and conscious disregard

21 for plaintiffs' rights, plaintiff Gregory Hampton was falsely arrested, imprisoned and physically

22 abused in front of his son, Plaintiff Ajaye Hampton, his girlfriend, Plaintiff Christine Hallinan, and

23 her children, Plaintiffs Courtney, Gavin and Devon Hallinan, whom Plaintiff Gregory Hampton

24 cares for as if he was their father, the aforesaid plaintiffs were caused to suffer severe emotional

25 distress, all to their damage in sums to be proved at time of trial.

26       79.    As a further proximate result of defendants' gross negligence, reckless behavior and

27 breach of duty, whereby Plaintiff Gregory Hampton was improperly served with an illegal

28 restraining order on behalf of her former husband, plaintiff Christine Hallinan was forced to move

out of the residence with her three children and incurred expenses for hotel, meals, transportation, and childcare.  In addition, Ms. Hallinan was unable to work a normal schedule as a result of being forced from her residence, and lost wages as a result.  The sum of the aforesaid damages will be proved at time of trial.

WHEREFORE, plaintiffs request judgment as set forth below against these defendants.

.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1.      For compensatory damages in an amount to be determined according to proof at trial;

2.      For punitive damages in an amount to be determined according to proof at trial;

3.      For reasonable attorney's fees, pursuant to 42 U.S.C.§1988 and/or California Law.

4.      For costs of suit, according to proof;

5..     For costs of suit incurred in this action.

6.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and each of them request a trial by jury.

Dated:  August 1, 2003                            Respectfully Submitted,

                                                  COURTNEY LAW OFFICES


                                                  By: _____
                                                  Vincent J. Courtney, Jr.
                                                  Attorneys for All Plaintiffs